Good morning. We have three appeals that are scheduled for oral argument this morning. And the first is the United States of America v. Alexander Olson. Arthur J. Madden III is here for the appellant. Olson, Scott Gray is here for the United States. And Mr. Madden, you may begin your argument. Thank you. May it please the Court, the 15-year sentence imposed in this case is a major 300 percent upward variance from the guideline sentencing range and from the recommendation of the government. Oh, so you say it's a variance and not a departure. I'm saying that you can't tell from the record. I believe it's the statement of reasons, which was filed, of course, a week after the sentencing, described it as a guidelines departure. The language at the sentencing hearing said a departure or a variance. It made no distinction. I'm not claiming a Rule 32H notice violation. So I'm not sure if the Is that because you don't have anything to add? If we sent you back and said give him notice, give him an opportunity, you don't have anything to add that you didn't already put in before the district judge? The notice, the statement of reasons that the court gave focused solely on the loss, that the guideline for the offense didn't adequately capture the number and severity of the loss. Right. Those are facts that are really, I don't think, are in dispute. The number of fires and the loss. So notice wouldn't have made any difference. I can't see it. Which explains why you didn't raise this issue. Well, the reason I didn't raise the issue is because I don't think the judge fixed that he was departing until a week later. I think that the judge treated a variance and a departure sort of in the same vein. And then when it came to the statement of reasons, check that box. But of course, that presents other issues because the amount of loss is one factor, but the sentence that was imposed involved other factors that were not mentioned as a variance in the statement of reasons and were only described as a departure. But that's sort of a separate issue. On the narrow notice issue, on the 32H issue, no, I don't think a notice on that would have made any difference on the narrow issue of the number of fires and the amount of damage. Talk a little bit about the reasons that the district judge gave for imposing the variance. I mean, the district judge said, look, this was a fire that was somewhat unusual in the sense that it was basically an act of domestic terrorism. There were people in the Walmarts at the time. There could have been a lot of people injured or killed through these actions. I mean, those are the reasons that as I read the transcript that the district judge said, look, the guideline range is not good enough for this defendant. Well, and those are the things that he discussed. Why are those not, I mean, why is it substantively unreasonable for him to say in light of these factors, I'm weighing the 3553A issues and I want to give this higher sentence? Sure, and I think the reason is that when we look at the Sykes and the Bottorf decisions that were rendered by a different panel of this court, the Bottorf panel said it's a close call. Bottorf got 15 years. Olson, who is clearly more culpable, more culpable, he's an adult. He aided and abetted a federal fugitive. They were hatched this plan, this love movement that morphed into the veterans order Walmart fires over a 10-year period of time or eight-year period of time. My client came into it, he was a 19, 20-year-old high school student, Navy graduate, Navy washout, psychiatric problems, who came into their orbit about a month before the fires. So if you give both of them the same sentence, 15 years, that means that the only consideration was the number of fires and the potential for injury. That was the only factor because if you look at other things as the court was required to do, the nature, the history and characteristics of the defendants, if you look at that, you have to separate the two. And I think that the court, this court can find that the judge didn't do that, that he didn't weigh the factors properly because he focused only on one part of 3553A1, which says the nature and circumstances of the offense and the history and characteristics of the offender. We had a two-day hearing, a sensing hearing, and it was devoted to those two parts, the fire, what happened, the numbers, and of course that was the government's part. But we put on more than a day of testimony that showed the history and characteristics of Olson, how he fit in, how this could have happened, how he could have become involved. The problem for you is that what you're saying is the district court took all that into consideration at the sentencing hearing, and then you have a pretty tough standard of review, abuse of discretion. The court abuses its discretion if it commits a clear error of judgment. And so the court considered the proper factors. So your argument, as I understand it, is that the court balanced those factors unreasonably? Well, I think that the court . . . First of all, I'm not sure if the court accorded any weight to the mitigation evidence. I think that the court, and this was the first of the factors, I think the court sort of followed what Judge Basher said and said, Look, this is horrible. There were four fires. People could have been hurt. That's good enough for me. That is the only factor that matters. And I think you have to reconsider . . . He was aware of them. Well, I'm sure he heard them, and we put them on for . . . And would you have us tell district judges that when you hear them and you're not persuaded by them, you're to say, I hereby acknowledge hearing those, but I'm not persuaded by them? I mean, he hears the evidence. He even mentioned it, and that was part of what you were arguing. But he's got to say the magic words, I hereby weigh them and find they're entitled to no weight or little weight? Well, I think he does have to say why . . . Because he doesn't think they matter in view of the aggravating factors. Well, then that means that he did not weigh a factor that's entitled to weight. No. What that means is he didn't give it as much weight as you wish he had given it. He didn't give it any weight. You can't say he didn't give it any weight, because he says it's outweighed by the other factors. And, you know, he didn't give the maximum sentence here. Wasn't it 25 percent below the max? It was, yes. It's 20 and 50. You don't know what weight he gave to those mitigating . . . Batorf, Sean Batorf, got the same 15-year sentence. The same acts occurred, the same number of fires, the same danger posed. It was a conspiracy. Batorf got 15 years, and so did Olson. The vulnerable young kid who came in late with psychiatric problems, and the adult who aided and abetted the federal fugitive, moved their families across the country, adopted a pseudonym, engaged in further fraud, orchestrated, had a leadership role in the offense. He gets the same 15 years. The only conclusion you can reach is that the judge completely discounted any litigation, and it was substantial. Not only his minor role in the offense, which the court found, or the court did not grant the government's motion for an aggravated role in the offense, the evidence that we put on, but also the overall scheme is so bizarre and so unusual that you have to come to the conclusion that the judge said, there's only one factor in this case, and that's the number of fires, the danger posed, and we're done. The history and characteristics of the individual don't matter, and that's an abuse of discretion, and that's why the sentence is substantively unreasonable. Thank you. All right. Thank you, Mr. Madden. Mr. Gray. Thank you, Your Honor, and may it please the court. Scott Gray on behalf of the United States of America. Alexander Olson pleaded guilty to participation in a conspiracy in which Olson and his co-conspirators set fires inside four Walmart stores during business hours while customers and employees were inside. The narrow question that is properly before this court today is whether the 180-month sentence fits within the capacious discretion that is afforded to district courts at sentencing. The district court weighed the pertinent factors and found that the sentence is appropriate and this court should affirm the sentence. Isn't one of the factors that we take into consideration in determining whether a court abused its discretion in fashioning a sentence is the extent of the, assuming it's a guideline sentence, the departure? I'm not sure I've seen one this big before. A 60-month departure or a 60-month, assuming it's a departure. If it was a departure, 60 months, that's a big gap. The United States admits that the sentence makes more sense as a variance, but either way. 120 months, right? It's from 60 to 180, so it's a 120-month upward deviation. That's a lot, isn't it? I mean, I'm not sure I've seen one that big before. It's a large upward deviation, Your Honor. And it certainly is true, and this court has said, that the district court has to give basically good reasons for a deviation of that magnitude. But the district court did so here. It cited a series of aggravating factors, including the risk to first responders, to customers inside the stores, to employees inside the stores. It cited the magnitude of the financial loss here. It cited the fact that these fires were designed to further an agenda. There was a document that was entitled a declaration of war, that was circulated to garner notoriety to these fires. All of those were aggravating circumstances that a district judge, in the exercise of its discretion, could consider. And I respectfully would note that this court has considered both substantial. All those factors apply to the other participants in these fires, too, though. And Sykes just got, what, three years more? So that's what we have to say about the disparity, the disparity based on the culpability of the defendants. I mean, those factors apply to all of the participants, right? Well, the short answer is yes, but I would push back respectfully on the idea that 36 months is a mere trifle. That is a substantial distinction in culpability. And once again, it was a call for the district court to make in the first instance. The Doak case, which the United States cited in its brief, was a substantial downward variance to the statutory minimum for a defendant who had aided and abetted in her husband's sexual abuse. And this court said clearly in the case of that extensive downward deviation that this court would affirm a sentence at times even if this court would have reached a different decision in the first instance. And so even if this is a situation where the court might have reached a different decision of its own accord, the court still should affirm. Because the United States readily acknowledges that a range of sentencing options were available to this district court. It certainly could be the case that the district court could have imposed a lower sentence, but that weighing of the pertinent factors was ultimately for the district judge to decide. And as Judge Carnes alluded to in one of his questions to Olson, the other traditional hallmarks of a reasonable sentence are present here. Number one, the sentence was not a reflexive deviation to the statutory maximum. The district court sentenced Olson below the statutory maximum. He also sentenced Olson below Jeff Sykes, and the district court acknowledged in its extensive sentence pronouncement that it considered Sykes the leader. But not very much, though. Sykes was the ringleader, and there wasn't that much of a difference between the two, it seems. I think that the district court acknowledged that while, as I was noting earlier, there were common aggravating factors, that the defendants still played different and at times substantial aggravating roles. So thinking about it as a body, if Sykes was the brains behind the operation, Alex was a very important part of giving it arms and legs. Alex was the person who was out in the fires. He admitted in his plea agreement that he set a fire in the first location, and he was present inside four of the stores during the fires and participated in the reconnaissance prior to Michaela Sheely lighting the fires in the different locations. Therefore, those are substantial aggravating factors. I know that Olson this morning drew a comparison to Sean Bottorff, and Sean Bottorff and Alex Olson received the same sentence, but there were different aggravating factors in their circumstances. Sean Bottorff was a longer-term participant in Jeff Sykes' criminal actions, and so that was an aggravating circumstance in Bottorff's case. But Bottorff generally was the getaway driver during the fires themselves. Was Bottorff present when Sykes strapped the suicide vest to the woman as this defendant was? Yes. Yes, Your Honor. They were all present? They were all present in the car. And if the court looks, I think that is sort of the pertinent set of comparators. Jeff Sykes, Alex Olson, Sean Bottorff, they were the three principal actors in the fires along with Michaela Sheely. Sheely received a substantially lower sentence, but that was because she cooperated with the United States and testified extensively at the evidentiary hearing prior to sentencing on the extent of the defendant's actions. So she isn't similarly situated to someone like Alex Olson, who pleaded guilty but ultimately did not cooperate with the United States or fully provide that accounting to the court. Can you address the variance versus departure issue? And this is the concern I have about that, is that this is such a substantial either variance or departure from the guidelines that the fact that the district court just sort of didn't know whether it was varying or departing and then in its statement of reasons said, I'm departing, it just suggests a lack of thoughtfulness to this, that the district court didn't really think about what it was actually doing when it imposed this sentence. So that's my concern. What do you have to say about that? So for the purposes of your question, I'm going to put aside the timeliness component of that. I don't want to concede that point, but I want to address your question on its head. I think if the court looks at the oral sentencing pronouncement, it reflects a careful degree of thoughtfulness of both aggravating and mitigating circumstances. What this court looks at and what controls for purposes of sentencing is the oral pronouncement of sentence. And I want to say that when I went back and looked at the transcript, it was maybe five, six, seven pages of discussion with three pages of central discussion by the district court going through aggravating circumstances and mitigating ones, saying on the one hand, Jeff Sykes is the ringleader. He is the brains of the operation. On the other hand, Alex Olson played a substantial aggravating role in the fires in his own right and then ultimately selects a sentence in the vein that accounts for those factors. And so I think there certainly is an attentive degree of thought here to the mechanics of the difference between a departure and a variance. I think as a practical matter, that's a term that often gets conflated as this court's precedent recognizes because back in the mandatory guidelines era, a departure was the way to deviate from the guidelines range. And so now attorneys, courts will at times use that term depart interchangeably. Would this be the case in order to clarify the distinction between a variance and a departure in order to provide some clarity to the bar and to the district court? Because it seems like the sentencing judge in this case was unsure whether or not his sentence amounted to a variance or a departure. I draw a slight. So I think the answer, bottom line to your question, certainly is yes. The court can make clear what a variance and a departure are. I read the district court statement on page 27 of the sentencing transcript slightly differently. I read it more in the vein of cases like Keene and McClellan where the district court is saying, I would reach this sentence whether I chose a departure or a variance as the means to arrive at the sentence. So I would either deviate upwards pursuant to the guideline scheme or conversely, if there were some problem with that approach, I would vary upward pursuant to the section 3553A factors. There's a case called Lousy where we said basically that. And it was a departure down with the government's appeal. But we said departure, variance, doesn't matter. He made it clear that he would reach the same result either way. And it is clear here that this judge would do that. And let me tell you about adding clarification. This regime was not intended for distinction between variance and departure other than if you went above the guideline range, that was a departure. Or below it, that was a departure. But if you went inside of it, that was a variance. And then along came Booker and said, no, no, no. You're not trapped inside the guidelines range in terms of variances. You can vary upwards or downwards, et cetera. And, you know, somebody's going to have to clarify some of the finer points. I understand some of the bigger ones. But around the edges, who knows what the difference is, if any. Well, and I think practically now, Your Honor, most sentences that deviate from the guidelines range are variances because any sentencing judge, when they are sentencing a defendant, considers the Section 3553A factors. So departures had the most purchase, at least most of them, back in the mandatory guidelines era. Now, there are individual departure provisions that certainly constitute an exception there. So I immediately think of Section 5K departures, which the United States files when a defendant cooperates in an investigation. Those departures still play a significant role. But many of those other departure provisions in the guidelines now, I don't want to say are superseded by, but often simply fold into the Section 3553A. Sort of mooted by, really. There's no reason to rely on those. If we did view this as a departure, so put the notice issue to one side, I guess. If we viewed this as a departure, I mean, do you think there's any difference between whether it's a valid departure or a valid variance? Not at this stage, Your Honor. Your Honor, so there may be, well, not that there may be. There are different procedural mechanics that apply when a district court imposes a departure versus a variance. However, those procedural arguments have now been forfeited at this stage. And, in addition, the ultimate inquiry with a sentence, in whether it is a departure or whether it is a variance, is whether the sentence comports with the Section 3553A sentencing factors. I'd point the court to the Blanco decision from earlier this year that the United States discussed in its supplemental brief. There was a sentence that appeared to be some sort of a hybrid departure and variance, but the defendant's ultimate challenge was simply to the reasonableness of the sentence as a whole. And so this court moved quickly past the procedural mechanics of the sentence and simply applied the substantive reasonableness analysis that this court has applied in many other cases. Is there a way for us to revisit our decision, United States versus Rosales-Bruno? That's a rhetorical question. I feel like there's been a lot of water that has been tread in the substantive reasonableness analysis over the past decades. But at bottom, the sentence here is a reasonable sentence. I would point earlier, Judge Wilson, I think you had asked me about magnitudes of deviation. I would point out I noted the downward variance in Doak, but also I wanted to note the upward deviation in Shaw. There I think the decision said that the high end of the guidelines range was 37 months, and the district court deviated upwards to the statutory maximum sentence of 120 months. And this court readily affirmed that sentence and concluded that it was a reasonable sentence. The final point that I will pivot to before I conclude is to note that even if the court had procedural concerns, those concerns are not properly before the court at this time. I noted that I was not waiving any sort of timeliness issue. And I think that the central problem with the defendant's position is even if the court were going to excuse the failure to object in the light of the district court's departure and variance language because the statement of reasons injected new information into the matter, there's the other problem that no procedural argument was raised in the initial briefing. And this court has said that when a party doesn't raise an issue in the initial brief, then that issue is abandoned. The United States also did note the departure variance distinction in its initial brief, and then that didn't garner further discussion until the court asked for supplemental briefing. And I think this court's case law on supplemental briefing is pretty clear that a party can't add new issues into the case at this stage unless there's some sort of intervening Supreme Court precedent, which there's not here. So in sum, the district court imposed a sentence that failed within the parameters of its sentencing discretion. Therefore, this court should affirm the sentence. And unless there are further questions, I will yield my 35 seconds and thank the court for its time. All right. Thank you, Mr. Gray. Mr. Madden, you've reserved some time for a medal. Yes, sir. There is no principled way to justify the difference, the similarity in sentences between the three principal actors and their moral culpability that is contained in the record. Three years difference between Sykes and Olson is... I've always wondered. Suppose we agreed with that, but we thought it was because Sykes got too lenient a sentence. Well... Two wrongs make a right. Two abuses of discretion correct the record? No, but I think from the public perception, and that's a consideration in 3553A, the respect for the law, I think that the 18-year sentence that Sykes got has got to be viewed as appropriate in his case. Why? Because... If this sentence doesn't have to be viewed as appropriate in this case, why does Sykes' have to be viewed as appropriate in his case? Well, because the opinion of this court has said it has on review... Yeah, but it wasn't attacked as too lenient. I don't know how it was... Yes. On appeal? Of Sykes. Sykes' appeal before this court was, no, it was attacked as excessive. I know, but we said, no, it's not excessive. Well, that doesn't help you any. Well, if his is appropriate... No, it's not excessive. It may be too lenient, but it's not excessive. So is there... I don't understand that the court has a per se rule that anything less than the maximum sentence is an indicia of leniency. I'm not saying that. I'm saying how do we know that Sykes' sentence was not too lenient? Because the judge found it was appropriate and this court found it was... Well, the judge found this sentence was appropriate. But this court has not yet, and that's why we're here. But what we found in Sykes' case was it was appropriate in the sense that it wasn't excessive. We didn't say that it was appropriate in the sense that it wasn't too lenient. The government didn't cross the field. See, I don't understand why the first guy to get sentenced is the hallmark that controls every sentencing thereafter. Did Judge Moore sentence Sykes? Yes. So he had that before him. He could make the determination. He had before him, of course, all of the co-defendants, and he purported to rank them in terms of culpability, and that's in the record. Suppose he's having a bad day and he sentenced Sykes to 12 months. Does that entitle your defendant to 12 months? It would certainly be an argument. Oh, I know you would argue it. Yes. And I would too, but does it entitle him to it? Does it make his sentence unreasonable if it's more than 12 months? What it would do is it would be a factor in the overall analysis under 3553A1. And all it is in this case is a factor. It doesn't set a ceiling for him, for your client. No, but factually I think it does. You can compare numbers. How can it, if it's just a factor, and that's what all our cases say, it's one factor among many that are listed. If it's just a factor, how can it be a mandatory ceiling, more than a mandatory ceiling? How can it ratchet everything else down? Well, I think 3553A contemplates that sentencing will be rational, and it says that one of the objectives is to avoid unwarranted disparity. The other side of that is unwarranted similarity. So there shouldn't be disparity between similarly situated people, but there needs to be a difference when the people are not similarly situated, and that's my argument. And there is a difference here. You're just saying it wasn't enough. And I'm saying he ignored the facts which should be plain to this court. He discussed those facts. How can you say he ignored them? Because he gave a 15-year sentence to Alex Olson, and he gave a 15-year sentence to Baldwin. You're saying that because the result was different and because the result you think on your client was excessive, that means the judge who said, I'm not ignoring these factors, in fact, was lying and ignored them. I don't say lying. Well, he said an untruth, according to you. He said, I'm considering these factors, but I don't think they result in a lower sentence. And you're saying he ignored the factors. Now, isn't ignored different, an anonym of considered? No, he ignored. You have to look from the externally. You can't put yourself in his mind. You can only see what he did. And what he did was there was externally looking at it. There was no way given to the complete difference in culpability between Bothorff and Olson. An objective, this court, external viewer looking at the record, what was before the judge, not what he was possibly thinking. It makes no sense to give them both the same sentence. If you follow what 3550 says. He didn't give them both the same sentence. They both got 15 years. Bothorff. I'm sorry. I thought you were talking about Sykes. And Sykes, a federal citizen. He gave the getaway driver, basically the getaway driver, the same sentence. No. He drove the car. He hatched the plan over an eight-year period of time. He was the brains of the outfit. He drove the car. He participated in the Pensacola fraud. He changed his name. He wasn't a fugitive. He uprooted his family. They hid out in Lillian, Alabama. He aided and abetted a federal fugitive on the lam for three years. No. He wasn't just the getaway driver. Alexander Olsen was the mule. He was the mule. You put those people up front. You have them do the dirty work. The smart people stay in the car or they stay in Bogota and they run the operation. And so, in a drug case, we distinguish between mules and kingpins. I think we have your argument. Thank you, Mr. Madden. Thank you. Thank you, Mr. Gray. The next case is David Bridges and Justin Dodson v. George Metz. And it looks like counsel is here for this case. Glad you're here. Heard you had a little accident this morning. Yes, Your Honor.